The undersigned have reviewed the prior Opinion and award based upon the record of the proceedings before Deputy Commissioner Shuping. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. A Pre-Trial Agreement, which is hereby incorporated by reference as if fully set-out herein, where the parties agreed to a number of jurisdictional and other factual stipulations.
2. Depositions of Drs. Ward and Greenhoot are hereby made a part of the evidentiary record.
* * * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is a 59 year-old married female with a high school education. Her other prior work experience has been as a machine operator at Wicks for nine months packing waste into cans, a zipper inspector at defendant-employer for seven and a half years, a teacher's aide and school bus driver for six years for Gaston County and a substitute teacher there for fourteen years immediately prior to returning to work for defendant-employer. It was because of stress and a resulting desire to get away from that type of work that plaintiff left teaching and returned to work for defendant-employer.
2. Upon returning to work for defendant-employer plaintiff ran a gapper putting the gap and bottom stop on zippers; but at the time of developing the admittedly compensable occupational disease giving rise hereto she was operating a slider machine, which involved the type of repetitive motion responsible for the same disease and to which position plaintiff can no longer return because of her permanent hand injury; but rather, is only capable of lighter non-repetitive work with limited lifting.
3. Although she was unemployed when the case was initially heard in September of 1994 and had not looked for any work since the Industrial Commission approved defendant-employer's form application to stop payments of benefits in June of 1993 other than returning to the local Board of Education on one occasion in August of that year to determine whether it would be willing to waive the more than two years of full-time college work required before she would be able to return to work again as a substitute teacher; by the time Dr. Ward last saw her on October 20, 1994 plaintiff had obtained a new job at Wendy's, which was assumedly within the limitations of her permanent hand injuries and was the type of suitable available work plaintiff could have obtained had she made a reasonable effort to find it in the some fifteen-month period when she did not look for work.
4. Plaintiff initially experienced problems with her hands in 1989 when she developed admittedly compensable bilateral carpal tunnel syndrome requiring a left carpal tunnel release in February of 1990 and a right carpal tunnel release in June of 1991, which was performed by Dr. Jerry Greenhoot, a Charlotte neurosurgeon. After undergoing the bilateral carpal tunnel releases, plaintiff attempted to return to the same type of repetitive work assembling zippers, but developed the admittedly compensable bilateral Flexor Tenosynovitis that was subject of the prior Industrial Commission Award herein resulting in her again becoming totally disabled by the same condition on August 13, 1991 when she began receiving benefits under that Award and those benefits continued until the Industrial Commission approved a defendant-employer's Form 24 application to stop payment in June of 1993.
5. In August of 1991, because she was not doing well, Dr. Greenhoot referred plaintiff to a hand surgeon, Dr. Alan Ward, for treatment of her bilateral Flexor Tenosynovitis, and he initially attempted a conservative course of treatment involving medication, splinting and injections, but ultimately in November of that year performed a Flexor Tenosynovectomy releasing her left carpal tunnel and Guyons canal as well as a release of the saddle deformity of her left middle and ring fingers.
6. By May 3, 1993, plaintiff had reached maximum medical improvement and/or the end of the healing period from and following the disabling occupational disease giving rise hereto, at which time she retained a 10 percent permanent partial disability of the left hand and a 5 percent permanent partial disability of the right hand and because of her permanent hand injuries was unable to return to her regular job for defendant-employer; but rather, only to lighter non-repetitive type work not requiring her to lift more than ten pounds on a frequent basis with either hand or twenty-five pounds with both.
7. In the interim because of her continuing hand problems Dr. Ward referred plaintiff to a neurologist, Dr. Barry Passini, for evaluation, including nerve conduction studies, and deferred further treatment and consideration of her problems until Dr. Passini's evaluation was completed.
Plaintiff is a diabetic and as indicated by the EMG and nerve conduction testing she underwent was suffering from an underlying diabetic polyneuropathy, which contributed to her symptoms. Although Dr. Passini suggested that she take Pamelor for the same symptoms; plaintiff did not feel her pain was sufficient to warrant doing so, which is inconsistent with the severe level of pain claimed at hearing or the fact that she was able to return to work less than two months later at Wendy's.
8. By the time she was seen by Dr. Ward on May 3, 1993, plaintiff was no longer in need of further surgery or therapeutic intervention for her bilateral Flexor Tenosynovitis and her condition has not substantially changed since.
9. The bilateral thumb problems plaintiff was experiencing when she returned to Dr. Ward sixteen months later in September of 1994 were not the result of her occupational disease; but rather, due to unrelated joint arthritis, which resolved with the thumb splint and anti-inflammatory medication he provided enabling her to obtain a job at Wendy's by the time she returned to Dr. Ward a month later.
10. In January of 1993 because she was not going to be able to return to her regular repetitive work job for defendant-employer and because there was not any suitable alternate non-repetitive work available for her with defendant-employer, defendant-carrier engaged the services of a vocational rehabilitation specialist to assist in ultimately enabling plaintiff to return to work. At the time of her initial evaluation in January of that year, the involved vocational rehabilitation counselor specifically asked plaintiff about her job interest and any type of work she would like to get into; however, plaintiff did not identify any type of work that she wanted to do and in particular did not then indicate a desire to return to work as a substitute teacher; but rather, indicated that she had left teaching because of stress and the resulting desire to get away from that field.
11. Due to the very limited number of jobs available for individuals having limited use of their hands, the involved vocational rehabilitation counselor looked for jobs as a hostess or in sales or in customer service.
In April of that year, the same vocational rehabilitation specialist attempted to find that type of work in earnest and plaintiff did apply for eight to ten jobs located by the vocational rehabilitation counselor. The same vocational rehabilitation counselor was able to find plaintiff available sales jobs at Belk's and Lane Bryant, which were within her physical limitations, were approved by Dr. Ward, were ones that she had the ability to perform considering her age, education background and work experience and could have obtained had she accepted either job; plaintiff did not do so. The reason that plaintiff did not obtain the same jobs was not because she lacked the physical ability to do them or they were inconsistent with her age, education background and work experience; but rather, because she did not want to have to work evenings or on the weekends and instead attempted to limit her work to the mornings.
12. Plaintiff, however, unjustly refused to consider either job because it would have required her to work during the evenings or on weekends and did not thereafter make a reasonable, but unsuccessful attempt, to find other work during the some sixteen months that elapsed then and the initial hearing in September of 1994. In the interim the only job that plaintiff sought was to return to the Gaston County Board of Education in August of 1993 seeking to determine whether it would be willing to waive the more than two years of full-time college she would have to attend before she could return to work as a substitute teacher, which was the only other job plaintiff looked for other than the eight to ten jobs that the involved vocational rehabilitation specialist was able to locate her during the approximately one month in earnest in April of 1993 that she attempted to assist plaintiff in finding suitable work.
13. In order to be able to return to work as a substitute teacher, plaintiff would have been required to attend full-time college for more than two years. In view of the fact that plaintiff indicated to the involved vocational rehabilitation specialist that she only intended on working until her husband retired in the next year and a half to three years and had already left the teaching profession once because of job stress; it was not a reasonable alternative for plaintiff to return to college in an attempt to obtain the necessary accreditation rather than attempt to return to the type of suitable sales work that the involved vocational rehabilitation specialist was able to locate for her.
13. Ultimately after hearing plaintiff was able to locate a job at Wendy's and could have obtained similar work had she made a reasonable effort to find it rather than making no effort for some fifteen months.
* * * * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. For the reasons stated in the above findings of fact by May 3, 1993 plaintiff was no longer totally incapacitated by the involved occupational disease; but rather, was able to return to alternate lighter non-repetitive work, which was then available within her physical limitations and consistent with her age, education background and work experience; but she unjustifiably refused to accept and did not thereafter make a reasonable, but unsuccessful attempt to find other suitable work for until after the initial hearing more than fifteen months later and was able to obtain it within some six weeks. Russell v. LowesProduct Distributor, 108 N.C. App. 762, 425 S.E.2d 454
(1993).
2. As a result of the occupational diseases giving rise hereto, plaintiff retains 5 and 10 percent permanent partial disabilities of the right and left hands respectively entitling her to 30 weeks of compensation at a rate of $136.25 per week commencing as of May 3, 1993, by which date she had reached maximum medical improvement and/or the end of the healing period from and following the occupational disease giving rise hereto, subject to a credit for the overpayment of compensation benefits for plaintiff's resulting total disability from May 3, 1993 until defendant's Form 24 application to stop payments of benefits was approved by the Industrial Commission.
* * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant shall pay plaintiff, on account of her resulting 5 and 10 percent permanent partial disabilities of the right and left hands, 30 weeks of compensation at a rate of $136.26 commencing as of May 3, 1993, subject to a credit for the overpayment of compensation benefits under the Industrial Commission Award from May 3, 1993 until the Commission approved defendant's Form 24 application to stop payment of benefits and a reasonable attorney fee for plaintiff's counsel.
2. A reasonable attorney fee in the amount of 25 percent of the net (after defendant's credit for overpayment of the total disability benefits) compensation due under the above Award is hereby approved for plaintiff's counsel, which shall be deducted from the same Award and forwarded directly thereto.
3. To the extent the same are reasonable designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendants shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the occupational disease giving rise hereto when bills for the same are submitted in accordance with the Industrial Commission rules.
4. Defendant shall bear the cost, including as part thereof, an expert witness fee in the amount of $250.00 to Dr. Jerry Greenhoot, who appeared by way of deposition and gave expert medical testimony as well as the $300.00 expert witness fee previously awarded Dr. Ward to the extent the same has not already been paid.
 S/ _____________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _____________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _____________________________ THOMAS J. BOLCH